IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYRIK VERNON, | : | |
| Plaintiff, | : | 1:13-cv-0936 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MATTHEW HYDE, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**July 27, 2016**

Plaintiff, Tyrik Vernon ("Vernon" or "Plaintiff"), an inmate who, at all times

relevant, was incarcerated at the State Correctional Institution at Coal Township

("SCI-Coal Township"), Pennsylvania, commenced this civil rights action pursuant

to 42 U.S.C. § 1983, on April 12, 2013.  The action is proceeding *via* an amended

complaint (Doc. 63) against Defendants Diamond Drugs, Inc. ("Diamond Drugs"),

Kelly Mirolli ("Mirolli"), Matthew Hyde ("Hyde") and Chad Yordy ("Yordy").

Presently pending is a motion (Doc. 83) to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(6) filed on behalf of Diamond Drugs.  Also pending is a

motion for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56

filed on behalf of Defendants Mirolli, Hyde and Yordy.  For the reasons set forth

below, the motions will be granted.

## I.    MOTION TO DISMISS

### A.    Standard of Review

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)).  A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record."  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "First, the factual and legal elements of a claim should be separated."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Second, the court must then determine whether the complaint states a plausible claim for relief, which is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679); *see also* 28 U.S.C. § 1915A(b) (directing the court to identify cognizable claims and to dismiss any portion of the complaint that fails to state a claim). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679; Fed. R. Civ. P. 8(a)(2).

**B.      Allegations Against Diamond Drugs**

Vernon alleges that on February 19, 2013, while incarcerated at SCI-Coal Township, Defendant Mirolli replaced his empty "Q-Var" inhaler with an "Alvesco Ciclesonide" inhaler. (Doc. 63, ¶¶ 4-6). When he informed Mirolli that he did not have a prescription for Alvesco Ciclesonide, Mirolli allegedly responded "we don't have any more Q-Var inhalers, so this is what we are giving everybody as a replacement." (*Id.* at 6). He states that on February 24, 2013, the replacement inhaler caused him to suffer severe chest pains, a migraine headache, pain on the left side of his body, and a swollen right hand. (*Id.* at 7). After using the inhaler again on February 28, 2013, he suffered the same side effects. (*Id.* at 11, 16, 17).

He alleges that during the relevant time period, Diamond Drugs was the pharmacy provider at SCI Coal Township that was responsible for switching all Q-

Var inhalers statewide.  (*Id.* at 21).  It is his contention that Diamond Drugs

replaced the Q-Var inhalers with Alvesco Ciclesonide inhalers without providing

notice and "with clear disregard of how the new brand would affect the health of

Plaintiff and all similarly situated users."  (*Id.* at 22, 30).  He specifically claims

that Diamond Drugs "violated the due process and equal protection clauses of the

Fourteenth Amendment to the United States Constitution when [it] implemented a

statewide policy to alter Plaintiff's and all similarly situated prisoner's medication

without a notice and in a manner contrary to law, 49 Pa.C.S. Section 18.158(b)(3),

with clear disregard for Plaintiff's and all similarly situated prisoners' health, and

contributing to the physical injury of the Plaintiff constituting a tort under state

law."  (*Id.* at 38).

>    **C.    Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  See 42 U.S.C. §

1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Whether a private party qualifies as a state actor is determined under one of three interrelated theories of government action: (i) the "public function" test, (ii) the "close nexus" test, and (iii) the "symbiotic relationship" test. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 801 (3d Cir. 2001). "Regardless of what test is ultimately applied, the object of the inquiry is to determine whether a private entity has exercised powers traditionally reserved exclusively to the government." *Brown*, 250 F.3d at 802. A finding of state action under any one of these tests is sufficient to deny a motion to dismiss. *Id.* at 801.

> Under the first test, a party engages in a public function when "the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities reserved to the government." *Id.* at 801–802. This test is a rigorous inquiry and requires that the "traditionally public function must be the 'exclusive prerogative of the [government].' " *Id.* at 802 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004–5, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Under the second test, a close nexus exists when the government "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must

in law be deemed to be that of the [government]." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quoting *Blum,* 457 U.S. at 1004, 102 S.Ct. 2777). Finally, the symbiotic relationship test "asks whether the government has 'insinuated itself into a position of interdependence' with the defendant." *Brown,* 250 F.3d at 803 (quoting *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)); *see also James v. City of Wilkes–Barre,* No. 3:10–cv–1534, 2011 WL 3584775, at *9 (M.D.Pa. Aug. 15, 2011).

*Davis v. Holder*, 994 F. Supp. 2d 719, 725 (W.D. Pa. 2014).

As stated *supra*, Vernon alleges that Diamond Drugs violated the due process and equal protection clauses when it implemented a statewide policy to alter his, and all similarly situated prisoners', medication without a notice and in a manner contrary to law. (Doc. 63, ¶ 38). He contends that Diamond Drugs "acted as a state actor by virtue of contractual agreement while providing medical services to the Commonwealth of Pennsylvania." (Doc. 94, p. 3). He suggests that "through discovery, [he] may well be able to present facts of interdependence between Diamond Drugs." (*Id.* at 5).

Construing the allegations against Diamond Drugs in a light most favorable to Vernon, the amended complaint fails to allege circumstances sufficient to characterize Diamond Drugs, a private entity, as a state actor. The simple act of a private entity implementing a new statewide policy addressing distribution of a product is not an indication that it has exercised powers traditionally reserved

exclusively to the government, as required by each of the above tests.  *Brown*, 250

F.3d at 802.  To the extent that he relies on the contractual agreement between

Diamond Drugs and the state to provide pharmaceutical drugs to state inmates, "a

state contractor and its employees are not state actors simply because they are

carrying out a state sponsored program and the contractor is being compensated

therefor by the state."  *Black v. Indiana Sch. Dist.* 985 F.2d 707, 710 (3d Cir.

1993).   "For the nature of the contractor's activity to make a difference, the

function performed must have been 'traditionally the *exclusive* prerogative of the

State.'"  *Rendell–Baker v. Kohn,* 457 U.S. 830, 842 (1982) (quoting *Jackson v.*

*Metropolitan Edison Co.,* 419 U.S. 345, 353 (1974).

> "[W]hile many functions have been traditionally performed by
> governments, very few have been 'exclusively reserved to the state.' "
> *Roberst* [sic] *S.*, 256 F.3d at 165–66 (quoting *Flagg Brothers Inc. v.*
> *Lefkowitz*, 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).
> Accordingly, courts have increasingly recognized the rigorous
> standard of this test and have rarely found that it is met. *Mark*, 51 F.3d
> at 1142. In *Rendell–Baker v. Kohn*, the court held that state funding
> for a private school for troubled high school students did not serve the
> exclusive prerogative of the state. 457 U.S. 830, 842, 102 S.Ct. 2764,
> 73 L.Ed.2d 418 (1982); *see also Black v. Indiana Area Sch. Dist.*, 985
> F.2d 707, 710–11 (3d Cir.1993) (state funding of a private contractor
> providing state school bus program was not performing the exclusive
> prerogative of the state); *Jackson*, 419 U.S. at 353 (the furnishing of
> utility services is not an exclusive prerogative of the state). Rare
> examples of traditional public functions include holding elections and
> exercising eminent domain. *See Ellison v. Garbarino*, 48 F.3d 192,
> 195 (6th Cir.1995).

*Graham v. City of Philadelphia*, 2002 WL 1608230, at \*6 (E.D. Pa. July 17, 2002)

The complaint is devoid of allegations that Diamond Drugs performs a function that is the exclusively reserved for the states or that it acts "in such a way as to create an integrated alliance with the government and [whose] conduct therefore is imbued with the power and prestige of government officials." *Gulati v. Zuckerman,* 723 F. Supp. 353, 357 (E.D.Pa. 1989) (quoting *Reuber v. United States,* 750 F.2d 1039, 1057 (D.C.Cir. 1984)).  Because Diamond Drugs cannot be deemed a state actor, the complaint fails to state a plausible claim for relief.

The Court recognizes that the sufficiency of this *pro se* pleading must be construed liberally in favor of Vernon, even after *Iqbal*.  *See Erickson v. Pardus*, 551 U.S. 89 (2007).  The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  Consequently, a complaint should not be dismissed with prejudice for failure to state a claim without granting leave to amend, "unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  The legal and factual deficiencies in Vernon's amended complaint render the pleading against Diamon Drugs incurable.  Therefore, affording him leave to amend would be futile.

## II.     MOTION FOR SUMMARY JUDGMENT

### A.     Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex.* at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving party 'may not rely merely on allegations or denials in its own pleadings; rather, its response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P. 56(e)(2)). "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the

movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v.*

*BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### B.       Statement of Material Facts

Vernon's medical records indicate that on January 19, 2013, prior to

switching inhalers, he was evaluated by Registered Nurse ("RN") Vanessa

Schooley at SCI-Coal Township for complaints of "chest pain/pressure" that had

been occurring "off and on x 1-2 wks." (Doc. 80, ¶ 10; Doc. 81-1, p. 2).  He was

encouraged to sign up for sick call, but did not do so.  (*Id.*)  Vernon disputes that

he was seen by Schooley and that he was "encouraged" to sign up for sick call.

(Doc. 92, ¶ 10).

He was evaluated the following day by RN Lori Alleman for complaints of

chest pain.  (Doc. 80, ¶ 11).  Vernon indicated the pain existed for one to two

weeks.  (Doc. 81-2, p. 2).  He was advised to sign up for sick call, but refused.

(*Id.*)  Vernon disputes that he refused to sign up for sick call.  (Doc. 92, ¶ 11).

On February 18, 2013, Doctor Alan Jay Popick ("Dr. Popick") prescribed an

Alvesco 160 mcg inhaler to treat Vernon's asthma.  (Doc. 80, ¶ 12; Doc. 81-3, p. 2;

¶ 6).  As a registered nurse, Defendant Mirolli is not permitted to prescribe

medications.  (Doc. 81-11, ¶ 5).  She did not dispense the inhaler to Vernon; it was

dispensed by Licensed Practical Nurse ("LPN") Renee Kerr on February 19, 2013. (Doc. 80, ¶¶ 12, 13; Doc. 81-11, ¶¶ 6, 7). In relying on the allegations in his amended complaint, that Defendant Mirolli replaced his empty "Q-Var" inhaler with an "Alvesco Ciclesonide" inhaler, and that when he informed Mirolli that he did not have a prescription for Alvesco, Mirolli allegedly responded "we don't have any more Q-Var inhalers, so this is what we are giving everybody as a replacement," Vernon disputes that Defendant Mirolli did not provide him the inhaler. (Doc. 63, ¶¶ 4-6. (Doc. 92, ¶¶ 12, 13).

On February 21, 2013, he had blood drawn; the results were documented on February 22, 2013. (Doc. 80, ¶ 14; Doc. 92, ¶ 14).

On February 24, 2013, at 5:45 p.m., Defendant Hyde treated Vernon for complaints of chest pain and a headache. (Doc. 80, ¶ 15; Doc. 92, ¶ 15). Vernon reported eating prior to the onset of chest pain. (*Id.*) His vital signs were taken and he was asked numerous questions about the pain. (Doc. 80, ¶ 15). As a registered nurse, Hyde is not permitted to prescribe medications. (Doc. 81-4, ¶ 15). Hyde dispensed 400mg of Motrin and advised him to return the next morning if the pain continued. (Doc. 80, ¶ 15). Vernon disputes that Hyde took vital signs and asked numerous questions about pain. (Doc. 92, ¶ 15).

Vernon returned to the medical department at 7:50 p.m. with complaints of chest pain. (Doc. 80, ¶ 16; Doc. 92 ¶ 16). Defendant Yordy took Vernon's vital signs and documented that there was no evidence of acute distress however, because it was his second complaint for chest pain, an electrocardiogram (EKG) was administered. (*Id.*) As a registered nurse, he is not permitted to prescribe medications. (Doc. 81-6, ¶ 24). Yordy instructed Vernon to report back in the morning if the pain continued. (Doc. 80, ¶ 16; Doc. 92 ¶ 16). Dr. Popick reviewed the EKG on February 26, 2013. (Doc. 80, ¶¶ 17, 19).

On February 28, 2013 at 7:50 p.m., Defendant Yordy addressed Vernon's complaints of "pressure like" pain in his chest. (*Id.* at 20). Vernon's vital signs were normal. (*Id.*) Yordy suggested Vernon request a sick call the following morning for further evaluation if pain continued. (*Id.*) Vernon did not request sick call the following morning. (*Id.* at 21). Vernon asserts that his placement in the Restrictive Housing Unit prevented him from going to sick call unless summoned by medical staff. (Doc. 92, ¶ 21).

## C.    Discussion

Vernon argues that Defendants Mirolli, Hyde and Yordy violated his Eighth Amendment rights when the exhibited "deliberate indifference. . . regarding the substituting of his prescribed asthma inhaler that resulted in injury, pain and

suffering. . . in the form of headaches, chest pains as well as swelling of and pain to the left side of his body."  (Doc. 90, p. 1).

Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence."  *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

To establish a violation of the right to adequate medical care, a plaintiff must show a serious medical need and acts or omissions by prison officials that indicated a deliberate indifference to that need.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle*, 429 U.S. at 105–06.

With regard to Defendant Mirolli, despite Vernon's contentions to the contrary, it is clear from the record that Dr. Popick prescribed the inhaler on February 18, 2013. Mirolli is not permitted to prescribe medication. Mirolli did not provide Vernon with the inhaler; LPN Kerr dispensed the inhaler. The record is devoid of any facts that Mirolli was personally involved in treating Vernon in any manner at the relevant time. Notably, even had Mirolli directly dispensed the inhaler to Vernon, she would have simply been following Dr. Popick's prescribed

treatment plan.  Defendant Mirolli is entitled to summary judgment based on lack of personal involvement.

As concerns Hyde and Yordy, the record clearly demonstrates that they were not involved in prescribing the inhaler to Vernon.  On each occasion that Vernon presented with complaints, both Hyde and Yordy immediately addressed medical concerns. Exams were conducted and, when warranted, blood work and diagnostic tests were performed and, at the conclusion of his visits, Vernon was advised to return to the medical department if his problems persisted.  No claim of deliberate indifference is made out where a significant level of care has been provided, as is the case here, and all that is shown is that the prisoner disagrees with the professional judgment of a physician. *Estelle*, 429 U.S. at 105–06, 107 (finding that "in the medical context, . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' "); *Durmer*, 991 F.2d at 67 (same). *See also Taylor v. Norris*, 36 F. App'x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended

treatment for hernias and decision not to schedule a doctor's appointment); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024–35 (7th Cir. 1996) (holding that an inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993) (finding inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim).  Courts will not second guess whether a particular course of treatment is adequate or proper.  *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762).  *See also, e.g., Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation); *Rush v. Fischer*, No. 09-9918, 2011 WL 6747392, at \*3 (S.D.N.Y. 2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs."). Hyde and Yordy provided Vernon with a significant level of medical treatment. He clearly disagrees with Dr. Popick's course of treatment in prescribing him a different asthma inhaler and the manner in which medical staff handled his complaints and managed his treatment.  Consequently, Defendants Hyde and Yordy are entitled to an entry of summary judgment.

III.   **STATE LAW CLAIMS**

Vernon's state law claims will also be dismissed.  Supplemental jurisdiction

over state-law claims is governed by 28 U.S.C. § 1367(a), which provides that

"district courts shall have supplemental jurisdiction over all other claims that are so

related to claims in the action within such original jurisdiction that they form part

of the same case or controversy under Article III of the United States

Constitution."  28 U.S.C. § 1367(a).  The Court may decline to exercise

supplemental jurisdiction if it "has dismissed all claims over which it has original

jurisdiction."  28 U.S.C. § 1367(c)(3).  Since the claims that form the basis of this

Court's original jurisdiction will be dismissed, the Court declines to exercise

supplemental jurisdiction.

IV.   **CONCLUSION**

Based on the foregoing, the motion (Doc. 83) to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6) filed on behalf of Diamond Drugs will be

granted.  The motion (Doc. 78) for summary judgment pursuant to Federal Rule of

Civil Procedure Rule 56 filed on behalf of Defendants Mirolli, Hyde and Yordy

will also be granted.

A separate order will enter.